UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHANMUGAM BALASUBRAMANIAM,<br><br>Plaintiff,<br><br>v.<br><br>SOURCE CONSULTING LLC, RYKO ENTERPRISES LLC, SRINIVAS BOLLA, SRINIVAS H. BHOPAL, AND LAKSHMISUJATHA VAKALAPUDI,<br><br>Defendants. | Case No.:  24-cv-10105<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Shanmugam Balasubramaniam ("Plaintiff" or "Balasubramaniam"), files this Complaint against defendants Source Consulting LLC ("Source"), rYKo Enterprises LLC ("rYKo"), Srinivas Bolla ("Bolla"), Srinivas H. Bhopal ("Bhopal"), and Lakshmisujatha Vakalapudi ("Vakalapudi") (collectively, the "Defendants"), for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, quantum meruit, fraudulent inducement, and specific performance.

## THE PARTIES

1. Plaintiff is an individual and resident of the State of New Jersey.

2. Upon information and belief, Defendant Source is a corporation organized and existing under the laws of the state of Massachusetts, having its principal place of business in Hopkinton, Massachusetts.

3. Upon information and belief, Defendant rYKo is a corporation organized and existing under the laws of the state of North Carolina, having its principal place of business in Hopkinton, Massachusetts.

4.      Upon information and belief, Defendant Bolla is a resident of the State of Massachusetts and the Managing Director of Source.

5.      Upon information and belief, Defendant Bhopal is a United States Citizen and currently a resident of India and the Vice President of Sales and Operations at Source.

6.      Upon information and belief, Defendant Vakalapudi is a resident of the State of Massachusetts and the majority shareholder of Source.

## NATURE OF THE ACTION

7.      This is a civil action for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, quantum meruit, fraudulent inducement, and specific performance.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because this is a civil action involving citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

9.      This Court has personal jurisdiction over Source and rYKo, because, upon and information and belief, they maintain a principal place of business and do business in the Commonwealth of Massachusetts.

10.      This Court has personal jurisdiction over Bolla and Vakalapudi because, upon information and belief, they are residents of the Commonwealth of Massachusetts.

11.      This Court has personal jurisdiction over Bhopal because, upon information and belief, he conducts and transacts a significant amount of business with and within the Commonwealth of Massachusetts.

12.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and because a substantial part of the events or omissions giving rise to the claim occurred in this district and personal jurisdiction over Source and rYKo exists in this district.

## BACKGROUND

A.    **Agreement Between Balasubramaniam and Source**

13.    Plaintiff is a seasoned business leader with over three decades of experience in the technology world having held leadership roles where he led global businesses spanning multiple continents and having engaged in business dealings with several Fortune 500 companies. Moreover, Plaintiff has been the Chief Executive Officer of a publicly traded company valued at approximately $1.8 billion.  In addition, Plaintiff previously oversaw the operations of a multi-billion-dollar business for a global, Big 5 Technology and fortune 500 company.  Plaintiff carries extensive professional experience with mergers and acquisitions and corporate restructuring.

14.    Upon information and belief, Source was founded in or around 2005 by Bolla and Vakalapudi.

15.    Source is a professional services and technology staffing and recruitment company.

16.    At all times relevant to this Complaint, Bolla served as the founder and CEO for Source and CEO for rYKo.

17.    At all times relevant to this Complaint, Vakalapudi served as the President and majority shareholder for Source and President for rYKo.

18.    At all times relevant to this Complaint, Bhopal served as Vice President of Operations for Source.

19.    Around the fall of 2019, Bhopal approached Plaintiff for ideas and help with scaling the business of Source.  Bhopal shared that while Source has had decent growth over the years,

Source had not been successful with scaling their business beyond providing staffing and hiring services that form the lowest tier of technology services with low margins.

20.    Bhopal engaged in conversations with Plaintiff regarding the business of Source and the challenges faced in Source's growth and specifically, sought advice and guidance from Plaintiff on how to accelerate growth and increase Source's profitability.

21.    Having dealt with similar situations throughout his over three-decade career, Plaintiff shared several ideas and suggestions with Bhopal.

22.    Bhopal discussed these ideas with Bolla, and together, they decided that Source should engage Plaintiff in order to leverage Plaintiff's extensive global experience and expertise and to identify areas of growth for Source.

23.    Beginning in January of 2020, Plaintiff, Bolla, Bhopal, and Source engaged in several discussions by phone.

24.    On January 15, 2020, at the recommendation of Bhopal, Plaintiff and Bolla met virtually to discuss strategies for leveraging Plaintiff's experience and expertise to identify potential acquisition targets for Source.

25.    On February 14, 2020, Plaintiff and Bolla met again, this time over dinner in Norwalk, Connecticut, to discuss Plaintiff's specific tangible ideas that Bolla and Bhopal could use in growing Source.

26.    During the dinner, Bolla offered to engage Plaintiff with Source in whatever capacity Plaintiff desired.  Plaintiff offered to provide his guidance to Source, but declined any committed professional relationship given his professional priorities.

27.    Over the next year and a half, until mid-2021, Bolla and Bhopal continued seeking "specific" professional and strategic advice and advisory services from Plaintiff, including, *inter*

4

*alia*, the best way for Source to grow as a business and issues related to mergers and acquisitions – *e.g.*, asking Plaintiff to assist with the identification, evaluation, pricing, and negotiations regarding potential acquisition targets.

28.    As part of Source's goal to leverage Plaintiff with their acquisition and in order to improve Source's chances of finding a potential company to acquire, Source sent emails to multiple brokers claiming that Plaintiff was their strategic advisor with significant financial acumen and market access.

29.    During this time, Source's, Bolla's, and Bhopal's lack of experience and expertise in mergers and acquisitions caused them to struggle in the effective implementation of Plaintiff's recommended strategies, and, as a result, they failed to make any meaningful acquisitions.

30.    Throughout this period, Source, Bolla, and Bhopal continued to solicit Plaintiff to enter into a direct employment agreement with Source.

31.    At the same time, Plaintiff understood the struggles Source, Bolla, and Bhopal were going through in terms of their sheer lack of specialized skills required to value and make a successful acquisition.

32.    To provide a path for Source to succeed with their growth ambitions, Plaintiff indicated to Bolla and Bhopal that, in return for an equity stake in the target company acquired by Source, he was willing to actively work with Source to identify potential acquisition targets.

33.    Beginning in June of 2021, Source, Bolla, and Bhopal engaged in extensive discussions with Plaintiff in pursuit of their acquisition strategy.

34.    After additional discussions, Plaintiff and Source reached an agreement on initial compensation terms that, in return for Plaintiff's continued advice and guidance through the merger and acquisition diligence and sale process, Plaintiff would receive a thirty percent (30.00%)

equity stake in the target companies that Source acquired, with each such equity interest to vest over a three-year period following the acquisition of each such acquired company.

35.     In return, Source agreed to fund and finance any contemplated acquisition and retain the remaining seventy percent (70.00%) equity stake in each acquired company.

36.     Source requested and Plaintiff agreed to purchase up to an additional 10% ownership interest in the acquired company "at the time of [an] acquisition of a company[.]" as an investor on case-by-case basis.

37.     On November 22, 2021, Plaintiff, Bolla, and Bhopal met in Milford, Connecticut to finalize the primary details of the above referenced agreement.

38.     At this meeting, Bolla promised that Source would provide all the required execution support with Plaintiff bringing his leadership and strategic acquisition skills to play.

39.     At the meeting, Plaintiff and Source entered into an agreement that provided the framework for Plaintiff's role and responsibilities at Source (the "Agreement").

40.     Bolla and Bhopal agreed to document the pertinent terms of the agreement that were discussed and agreed to at the November 22, 2021 meeting and send the same to Plaintiff for his review.

41.    On or about December 30, 2021, Bolla, on behalf of and in his capacity as the Managing Director of Source, sent Plaintiff the following email memorializing the pertinent terms of the Agreement (the "Memorialization Email"):



42.    Although the Memorialization Email provided the pertinent terms of the Agreement to expedite the performance of Plaintiff's work, Plaintiff understood that the parties would later enter into a more traditional and refined written agreement that would also contain additional supporting terms.

43.    To confirm his understanding, Plaintiff replied to the Memorialization Email and stated, in pertinent part, "[w]e can use the notes sent by you (thanks by the way for sharing) to iron out the details.  I am fine with the broad construct with an understanding we will bring in more clarity and English and fix gaps [] (will send details).  The beginning of 2022 is also the beginning of a potentially win-win relationship."

44.    In order to appropriately commit himself to his Agreement with Source, Plaintiff was forced to forgo the pursuit of other highly compensated and desirable positions elsewhere.

**B.    Plaintiff's Work with Source.**

45.    Following the transmittal of the Agreement, on January 1, 2022, Plaintiff began restructuring the entire go-to-market strategy of Source by, *inter alia*, instituting a new structure, pursuit plan, strategy, and direction to actively engage in pursuing acquisitions for Source.

46.    As part of this exercise, Plaintiff spent a significant amount of time identifying and reviewing approximately 100 potential companies for Source to acquire.

47.    This review involved researching several hundreds of technology companies up for sale to identify those that could meet the acquisition goals of Source, including: (a) identifying and reviewing company strategy; and (b) evaluating the strengths and weaknesses to determine whether they meet the requisite revenue, profit, and growth objectives that Source desired and articulated by Bolla in the Memorialization Email.

48.    Ultimately, because some of these companies were not actively being marketed for sale, Plaintiff engaged with the owners of the companies to gauge their potential interest in selling and discussed the benefits of the same.

49.    Out of approximately 100 companies identified, Plaintiff reviewed each of their Confidential Information Memorandum's and thereafter, filtered and short-listed approximately 25 companies that Plaintiff believed provided the best potential fit for Source and its goals.

50.    Plaintiff personally engaged in discussions with each of the short-listed companies, including their respective CEOs and brokers, and reviewed each company's detailed financial reporting to fully analyze their long-term business potential and their potential synergies with Source. In addition, Plaintiff defined a strategic price to win the acquisition and identified necessary terms and conditions and negotiated the same.

51.    In or around March of 2022, among the short-listed companies, Plaintiff identified ASA Solutions ("ASA") to be an excellent fit for meeting Source's ambitions to acquire a quality technology services company and recommended to Bolla and Bhopal that Source pursue an aggressive strategy to purchase ASA.

52.    Based on Plaintiff's assessment, Bolla and Bhopal agreed that Source should pursue an acquisition of ASA and green-lighted Plaintiff to pursue the same on behalf of Source.

53.    Plaintiff promptly set to work on the acquisition of ASA and designed the aforementioned aggressive pursuit strategy. Plaintiff identified and recommended a purchase price that resulted in Source being among the four short-listed companies selected to pursue the acquisition.

54.    For the next five months, Plaintiff engaged in intense activities concerning the acquisition process of ASA including, but not limited to, defining the rationale for acquiring ASA, convincing ASA that Plaintiff would personally support the transition of ASA into good hands, defining a winning price strategy, significant due-diligence of ASA, conducting daily cadence and

reviews, discussing the acquisition with external advisors including lawyers and bankers, and convincing various banks to invest into the purchase of ASA.

55.    All the activities associated with the acquisition of ASA were done either directly by Plaintiff or under the complete direction from Plaintiff.

**C.    <u>Source's Breach of the Agreement with Plaintiff.</u>**

56.    On or around August 23, 2022, Plaintiff emailed Bolla to confirm his thirty percent (30.00%) ownership interest, and right to participate in an additional ten percent (10.00%) equity investment, in ASA (the then to-be acquired company) pursuant to the terms in the Agreement.

57.    Plaintiff also provided a document containing his proposed compensation structure which, *inter alia*, stated that "[a]s we get closer to our first acquisition, we should bring in some structure to the ASA transaction vis-à-vis my participation.  We agreed on two key items: 30% equity; 10% investment."

58.    Within the proposed structure, Plaintiff "agree[ed] to hold the equity for a period of three-year lock-in unless we both mutually agree to release that lock-in sooner [,]" which is what Plaintiff, Bolla, and Bhopal originally agreed to as demonstrated in the Memorialization Email.

59.    In response, on August 24, 2022, Bolla, now with the benefit of a nearly closed acquisition of ASA, attempted to renege on the prior Agreement.

60.    Specifically, Bolla sent Plaintiff an email stating, among other things, that "I am surprised and shocked to see your structure which is not in line with our discussions," and attached a document that proposed revisions to the previously agreed to terms of the Agreement.

61.    Bolla acknowledged that the prior Agreement required that Plaintiff receive equity in the acquired company, but expressed a desire that the equity not vest unless certain performance

milestones were met. Specifically, Bolla stated that he was "not comfortable giving equity up front" and "[i]t must be earned based on achieving certain goals as discussed earlier."

62.    However, Bolla then attempted to disregard the entire Agreement altogether and proposed the following:

- instead of 25k, we will pay 150k for closing the ASA deal
- Sales Leader role at 100k per year for driving the growth
  - This doesn't need to be a Full-time role
- NewCo will give you 10% at the end of first year from deal close date (on achieving revenue, profit goals)
- NewCo will give you 2nd 10% at the end of 2nd year from deal close date (on achieving revenue, profit goals)
- NewCo will give you 3rd 10% at the end of 3rd year deal close date (on achieving revenue, profit goals)
- We will take care of the Management and Operations
- We can put these goals, equity in writing and can be mutually signed

63.    The above-refenced structure in no way, shape, or form resembled what was originally agreed upon in the Agreement or the Memorialization Email.

64.    At all times during his work for Source, Plaintiff worked diligently, faithfully, and effectively to structure a deal for the purchase of a company.

65.    Unsurprisingly, Plaintiff's efforts on behalf of Source were highly successful.  It is only due to Plaintiff's direct efforts, strategy, pricing, negotiations, and approach that led to a successful submission of a Letter of Intent and the final selection of Source by ASA as a potential buyer.

66.    Critically, and upon information and belief, on November 22, 2022, Source acquired ASA Solutions.

67.    Following such acquisition, Bolla shared the following information via a post on his LinkedIn profile:



68.    To date, Plaintiff has not been compensated for any of this work for the Defendants.

69.    Over the course of conducting work for Source, Plaintiff spent over 2000 hours of his time analyzing, reviewing, and connecting with dozens of companies in the hope that Source may acquire a company that would significantly bolster its profile – work that resulted in Plaintiff's acquisition of ASA.

70.    During this period, Plaintiff travelled extensively which required flights and hotels that Plaintiff paid for himself.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT –**
**AGAINST SOURCE CONSULTING LLC AND RYKO ENTERPRISES LLC)**

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "70" as if as if fully set forth herein.

72.     The Agreement is a valid and binding contract.

73.     Plaintiff complied with all material terms and conditions of the Agreement, which constituted a valid and enforceable contract.

74.     Pursuant to the terms of the Agreement, Plaintiff is entitled to a thirty percent (30.00%) ownership interest in ASA based upon his work for Source and rYKo.

75.     Pursuant to the terms of the Agreement, Plaintiff is entitled to an option to purchase an additional ten percent (10.00%) ownership interest in ASA at the price that Plaintiff would have been required to pay on the acquisition date pursuant to the terms of the Agreement.

76.     Source and rYKo have materially breached the terms of the Agreement by failing and refusing to (a) effectuate the transfer or otherwise recognize Plaintiff's right to thirty percent (30.00%) ownership interest in ASA, and (b) offer Plaintiff the opportunity to purchase an additional ten percent (10.00%) ownership interest in ASA at the price that Plaintiff would have been required to pay on the acquisition date.

77.     Source and rYKo were capable of performing their obligations under the Agreement but, instead, breached the Agreement through their actions above.

78.     As a direct, foreseeable, and proximate result of Source and rYKo's breach of the Agreement, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

79.     By reason of the foregoing, Plaintiff should be awarded compensatory damages in an amount to be determined at trial, together with such other legal and equitable relief as may be just and proper.

## SECOND CAUSE OF ACTION
**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – AGAINST SOURCE CONSULTING LLC AND RYKO ENTERPRISES LLC)**

80.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "79" as if fully set forth herein.

81.     Implied within every contract is a covenant of good faith and fair dealing, which prevents one contracting party from engaging in conduct that unfairly frustrates the other party's right to receive the benefits of the parties' agreement.

82.     The Agreement is a valid and binding agreement between Plaintiff, on the one hand, and Source and rYKo, on the other hand.

83.     Plaintiff has performed all obligations required of him under the Agreement.

84.     Source and rYKo unfairly frustrated Plaintiff's right to receive the benefits of their Agreement by, *inter alia*, failing and refusing to effectuate the transfer or otherwise recognize Plaintiff's (a) entitlement to thirty percent (30.00%) ownership interest in ASA, and (b) option to purchase ten percent (10.00%) ownership interest in ASA.

85.     Source and rYKo have violated the Agreement's implied covenant of good faith and fair dealing.

86.     Implicit in the Agreement is an obligation for Source and rYKo to act in good faith, which, *inter alia,* includes providing Plaintiff with his rightfully earned equity grant and option in ASA.

87.     When entering into the Agreement, it was the intention of the parties that Plaintiff would immediately begin work for Source and rYKo.

88.     To date, Source and rYKo have not provided Plaintiff with any compensation for his work in fulfilling the Agreement.

89.     As a direct and proximate result of Source and rYKO's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

90.     By reason of the foregoing, Plaintiff should be awarded compensatory damages in an amount to be determined at trial, together with such other legal and equitable relief as may be just and proper.

## THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT, IN THE ALTERNATIVE – AGAINST ALL DEFENDANTS)

91.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "90" as if fully set forth herein.

92.     Plaintiff asserts this claim in the alternative.

93.     Defendants were benefitted by Plaintiff's work product and effort for and on behalf of Source.

94.     Despite Plaintiff's integral role in assisting in and executing on the purchase of ASA, Plaintiff was paid nothing for his services.

95.     Plaintiff expected to be compensated with (a) entitlement to thirty percent (30.00%) ownership interest in ASA, and (b) an option to purchase ten percent (10.00%) ownership interest in ASA.

96.     To permit Source to retain the fruits of Plaintiff's labor would be against equity and good conscience.

97.    Such enrichment came at great personal expense to Plaintiff, personally, temporally, and financially.

98.    By reason of the foregoing, in the event Plaintiff is not compensated with the required amounts agreed to in the Agreement, Defendants will be unjustly enriched by benefitting from Plaintiff's work in an amount to be determined at trial, together with such other legal and equitable relief as may be just and proper.

### FOURTH CAUSE OF ACTION
### (FRAUDULENT INDUCEMENT –
### AGAINST SRINIVAS BOLLA AND SRINI BHOPAL)

99.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "98" as if as if fully set forth herein.

100.    On November 22, 2021, Bolla and Bhopal represented to Plaintiff that he would be compensated with a thirty percent (30.00%) equity grant in an acquired company and the opportunity to purchase a ten percent (10.00%) equity stake in acquired company.

101.    That representation was false, and Bolla and Bhopal knew that representation to be false when they made it.

102.    Bolla and Bhopal made the above representations to induce Plaintiff to rely on those representations, so that Plaintiff would dedicate his professional efforts to Source and structure a deal for the purchase of a company for the benefit of Source – and the indirect benefit of Bolla and Bhopal of Source.

103.    Plaintiff actually relied on Bolla and Bhopal's representations.

104.    Plaintiff did not know that Bolla and Bhopal's representations were false.

105.    Plaintiff performed under the Agreement and devoted substantial time and efforts to working for, and on behalf of Source, based on Bolla and Bhopal's representations.

106.    As a direct and proximate result of Bolla and Bhopal's fraudulent inducement, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

107.    By reason of the foregoing, Plaintiff should be awarded compensatory damages in an amount to be determined at trial, together with such other legal and equitable relief as may be just and proper.

### FIFTH CAUSE OF ACTION
### (QUANTUM MERUIT –
### AGAINST SOURCE CONSULTING LLC AND RYKO ENTERPRISES LLC)

108.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "107" as if as if fully set forth herein.

109.    Plaintiff asserts this claim in the alternative.

110.    In the event the Court finds that Plaintiff is not entitled to his equity from the Agreement, Plaintiff is entitled to damages from Source and rYKo on the basis of *quantum meruit*.

111.    From November of 2021 to August of 2022, Plaintiff performed significant services for Source and rYKo and produced considerable work product in good faith for, and on behalf of Source and rYKo.

112.    Source and rYKo accepted such work product, enjoyed the benefits of Plaintiff's work product and, to date, retained Plaintiff's work product.

113.    On information and belief, Source and rYKo continued to use and are presently using Plaintiff's work product in form of strategies with mergers and acquisition, structure of pricing and negotiations, conducting due diligence.

114.    Plaintiff expected to be compensated with at least a thirty percent (30.00%) equity ownership interest in ASA.

115.    In addition to the thirty percent (30.00%) equity grant, Plaintiff expected to be allowed to purchase an additional ten percent (10.00%) equity stake in ASA, as was promised by Source and rYKo.

116.    Source and rYKo were substantially enriched as a result of the arrangement set forth in the Agreement and Plaintiff's actions following the Agreement's transmittal that were induced by Bolla's drafting and transmittal of the Agreement.

117.    Because Source and rYKo were substantially enriched by Plaintiff's actions, and because they induced him to take those actions by promising him that he would be compensated (through the Agreement), equity and good conscience militate against Source and rYKo retaining the value of Plaintiff's acts without Plaintiff being compensated therefor.

118.    As a result of the foregoing, Plaintiff is entitled to judgment in an amount to be determined at trial, together with such other legal and equitable relief as may be just and proper.

### SIXTH CAUSE OF ACTION
### (SPECIFIC PERFORMANCE –
### AGAINST SOURCE CONSULTING LLC AND RYKO ENTERPRISES LLC)

119.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" as if fully set forth herein.

120.    Pursuant to the Agreement, Source and rYKo are obligated to deliver a thirty percent (30.00%) equity grant in ASA to Plaintiff.

121.    Despite their obligation to do so, Source and rYKo have failed and refused to deliver said equity grant.

122.    Pursuant to the Agreement, Source and rYKo are obligated to offer Plaintiff an option to purchase an additional ten percent (10.00%) equity grant in ASA.

123.    Despite their obligation to do so, Source and rYKo have failed and refused to offer said equity option.

124.    As a result of such refusal by Defendants, Plaintiff has suffered damages.

125.    Plaintiff has no adequate remedy at law.

126.    In the absence of injunctive relief and specific performance, Plaintiff will suffer irreparable harm.

127.    Plaintiff requests, therefore, that the Court enter an order requiring Source and rYKo to specifically perform the Agreement, including providing Plaintiff with a thirty percent (30.00%) equity grant in ASA and the option to purchase an additional ten percent (10.00%) equity stake in ASA.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Shanmugam Balasubramaniam respectfully requests that judgment be entered in its favor and against defendants Source Consulting LLC, rYKo Enterprises LLC, Srinivas Bolla, Srinivas H. Bhopal, and Lakshmisujatha Vakalapudi:

A.    Awarding Balasubramaniam a 30% equity share in ASA Solutions and the option to purchase an additional 10% equity share in ASA Solutions;

B.    *In the alternative*, awarding Balasubramaniam with the value of his 30% equity share in ASA Solutions and the value of his 10% equity share in ASA solutions at the time of purchase;

C.    Awarding punitive damages for Defendants' willful misconduct;

D.    Awarding Balasubramaniam his reasonable attorneys' fees and costs in bringing this action;

E.    Awarding pre- and post-judgment interest;

F.    Awarding Balasubramaniam any and all additional damages in an amount to be determined at trial; and

G.    Granting such other and further relief as the Court deems just and proper.


Dated: New York, New York                         Respectfully submitted,
       January 12, 2024


                                                  THOMPSON HINE LLP

                                        By:    /s/ Karim Sabbidine
                                               Karim Sabbidine
                                               John Allerding (*pro hac motion pending*)
                                               300 Madison Avenue, 27th Floor
                                               New York, New York 10017-4611
                                               Tel. (212) 344-5680
                                               Fax (212) 344-6101
                                               Karim.Sabbidine@ThompsonHine.com
                                               John.Allerding@ThompsonHine.com

                                               *Attorneys for Plaintiff*
                                               *Shanmugam Balasubramaniam*

## **JURY DEMAND**

Plaintiffs hereby demand trial by Jury on all claims, issues and defenses herein.

Dated:        January 12, 2024
              New York, New York

                              THOMPSON HINE LLP

                    By:   /s/ Karim Sabbidine
                          Karim Sabbidine
                          John Allerding (*pro hac motion pending*)
                          300 Madison Avenue, 27th Floor
                          New York, New York 10017-4611
                          Tel. (212) 344-5680
                          Fax (212) 344-6101
                          Karim.Sabbidine@ThompsonHine.com
                          John.Allerding@ThompsonHine.com

                          *Attorneys for Plaintiff*
                          *Shanmugam Balasubramaniam*